MARVIN, Chief Judge.
In this succession proceeding, a creditor, FDIC, who filed a formal proof of claim that the succession representative rejected, appeals two judgments, the first of which authorized payment of listed debts, and the second of which placed the heirs in possession of a portion of the estate.
The creditor contends the trial court should have suspended the payment of debts and distribution of assets until its claim against the succession is litigated in a separate action. We deem it significant that FDIC did not oppose the application to pay debts or otherwise seek to suspend the proceedings in the trial court after the succession representative rejected FDIC’s claim.
On this record, we find no error and affirm the judgments. CCP Arts. 3241-3246, 3301-3308, 3372.
FACTS
Edwin Newton Wray, a former director of United Mercantile Bank in Shreveport, died January 24, 1989, survived by his wife and two children. In early February, his will was probated and his children were appointed as testamentary executors.
In July 1989, Wray’s widow and children received an offer to purchase community real estate for $130,000. The executors formally obtained court approval on August 25, 1989, to sell Wray’s interest. Notice of the application to sell was first published in the Shreveport Journal on July 26, 1989. Two days later, FDIC filed a “Creditor’s Formal Proof of Claim” in the succession proceeding, alleging its appointment as receiver of United Mercantile Bank in January 1988, about a year before Wray’s death, and asserting a claim against Wray’s succession “in the amount of $2,000,000 ... arising out of [Wray’s] breaches of fiduciary duty owed to United Mercantile Bank and other acts of negligent conduct ... as a director thereof.”
In a supporting affidavit .attached to the proof of claim, an FDIC “liquidation assistant” asserted that Wray approved 17 unsound commercial and industrial loans between July 1984 and March 1987, without attempting to determine the creditworthiness of the borrowers or the value of the collateral, which loans caused losses “in excess of $2,000,000.”
On July 31, 1989, the attorney for the executors acknowledged receipt of FDIC’s proof of claim and requested supporting details about the loans referred to in the affidavit to allow the executors to either acknowledge or reject FDIC’s claim within the 30-day period provided by CCP Art. 3242. The attorney prefaced the request for additional information by stating, “[t]his letter is neither an acknowledgment nor expressed rejection of the claim.” A copy of this letter to FDIC was filed in the succession proceeding on September 21, 1989, with an affidavit by the attorney for the executors stating that no response had been made by FDIC to the request for detailed information about FDIC’s claim.
*1165 Court approval to sell Wray’s interest in the real estate was granted on August 25, 1989, after FDIC’s proof of claim was filed and before the affidavit of September 21, 1989, was filed.’ The clerk’s certificate stating that no opposition to the sale was filed within seven days from the date of the last publication of notice has a handwritten notation, “except for creditors formal proof of claim filed 7-28-89 by FDIC.” FDIC did not formally oppose the sale or attempt to appeal the judgment authorizing the sale.
In April 1990, the executors filed a “Petition to Homologate the Sworn Descriptive List,” to which was attached a list of assets valued at $4.6 million, consisting mostly of stocks and bonds, with debts and expenses totaling about $300,000, for a net estate value of $4.3 million. The list of debts did not include FDIC’s claim. The executors sought court authority to pay the debts and expenses and stated in their petition, “No creditor has petitioned for or requested notice of the filing of this petition, however, the Federal Deposit Insurance Corporation has filed a Formal Proof of Claim herein.”
Notice of the petition to homologate the sworn descriptive list was published in the Shreveport Journal and was sent to FDIC by certified mail on April 9, 1990. FDIC did not file opposition to the petition. On April 17, 1990, the clerk certified that no opposition was filed within seven days of publication, “except for claim by the FDIC.” On the same day, judgment was signed homologating the sworn descriptive list and authorizing the executors “to pay the debts of this succession and distribute property in accordance therewith.”
On April 23, 1990, the Wray children petitioned for and were granted a partial judgment of possession placing them in possession of about $663,000 in cash, derived from special bequests to them by Wray of about $413,000 and their mother’s renunciation of a testamentary usufruct which was valued at $250,000. The heirs accepted the partial dispositions with benefit of inventory. The partial judgment of possession authorized them, as executors, to continue administering the succession, to sell stocks and bonds at private sale, and to pay “all debts, expenses and charges of this succession, as more fully set forth in the Sworn Descriptive List previously filed herein.”
On May 24, 1990, a month later, FDIC entered an appeal of the judgments of ho-mologation and partial possession and filed an “Objection to Filing of Tableau of Distribution,” asserting that the judgment ho-mologating the sworn descriptive list had been signed but no tableau of distribution had been filed. Relying on the filing of its July 1989 proof of claim, FDIC formally objected “to any Tableau of Distribution which may be- filed in this matter to the extent that it does not include the claim of FDIC against the Succession ...”
When the appeal was taken, FDIC had not yet filed its suit against the succession or other former bank officers and directors. At oral argument of this appeal FDIC’s attorney said FDIC had filed suit in federal court in January 1991 against Wray’s succession and 13 other co-defendants, claiming over $10 million in damages.
CCP SCHEME FOR ENFORCING CLAIMS AGAINST A SUCCESSION
The procedural scheme to enforce a claim against a succession is found in CCP Arts. 3241-3246. These articles provide that the creditor must present a written claim to the succession representative, who has 30 days to acknowledge or reject the claim. If, as here, the succession representative does neither within 30 days, the claim is deemed rejected. Art. 3242.
The creditor’s filing of a formal proof of claim suspends prescription on the claim even if the claim is later rejected by the succession representative. Art. 3245. The creditor “may enforce his claim judicially” only after the succession representative has rejected the claim. Art. 3246. See also paragraphs (c) and (d) of the Official Revision Comments following Art. 3246. These comments state that the article applies “to all claims, whether liquidated or not, including damage suits,” and that it is based in part
*1166 upon Art. 986 of the 1870 Code of Practice, which provides that if the claim is not liquidated or if the representative refused to approve it, the creditor may bring an ordinary action or may proceed by way of opposition to the final account. The language “may enforce his claim judicially” is intended to cover both of these procedures.
The succession representative must obtain court authority to pay debts and charges of the succession. CCP Art. 3301. Court authority is sought by filing “a petition for authority and ... a tableau of distribution listing those charges and debts to be paid.” Art. 3303. Here, the executors listed the debts and charges they proposed to pay on the sworn descriptive list and did not file a separate tableau of distribution. FDIC has not complained of this “hybrid” pleading, which amounts to a tableau of distribution to the extent that it seeks authority to pay specific debts. We shall hereafter use the terms “sworn descriptive list” and “tableau of distribution” interchangeably. See and compare Succession of Smith, 247 La. 921, 175 So.2d 269 (1965).
If the executors had listed FDIC’s claim on the sworn descriptive list, this would have created “a prima facie presumption of the validity of the claim.” CCP Art. 3244.
The executors published notice of the petition and mailed notice to FDIC, notwithstanding that FDIC had not filed a request for notice as provided by CCP Art. 3305. FDIC did not file an opposition to the petition, which would have been tried summarily under Art. 3307.
FDIC argues that the usual procedure of having a creditor’s opposition to the payment of debts summarily tried in the succession proceeding is unworkable for its complex and unliquidated claim of officers’ and directors’ liability. Conceding that it could not “wait forever” to file a separate suit, FDIC contends the trial court should have suspended the homologation of the sworn descriptive list until its claim against Wray’s succession is resolved in an ordinary proceeding, allowing the administration of the succession to continue in a manner that protects FDIC. As authority for this contention, the FDIC cites Succession of Isgitt, 297 So.2d 231 (La.App. 3d Cir.1974), hereafter discussed.
The executors contend FDIC could have protected itself either by timely filing an opposition to the homologation of the sworn descriptive list or a separate action on its claim after the claim was deemed rejected, but cannot rely solely and indefinitely on the filing of a proof of claim without formally seeking to judicially enforce that claim.
SUCCESSION OF ISGITT
In Succession of Isgitt, supra, the decedent died while a worker’s compensation suit was pending against him. The claimant, Oliver, substituted the succession representative as a defendant in the w.c. action and timely opposed, in the succession proceedings, the succession representative’s tableau of distribution which omitted Oliver’s w.c. claim. Oliver sought to have the claim listed on the tableau or to have the homologation of the tableau suspended while the w.c. suit was pending. The trial court rejected the opposition and homolo-gated the tableau, finding no authority to grant the relief the claimant sought. The court of appeal reversed, ordering that the homologation of the tableau be suspended “until a final decision is reached in the workmen’s compensation case ... [without limiting] the authority of the district court, in due proceedings, to allow the payment of those debts which would clearly prime any judgment which Oliver may secure.” 297 So.2d at 234.
FDIC similarly seeks in this appeal to have us suspend homologation of the sworn descriptive list to “maintain the status quo and prevent the dissipation of the succession assets until the unliquidated claim is resolved one way or another in an ordinary proceeding in the proper court. ... In the interim, as pointed out by the court in Isgitt, the probate court would be free to allow administrative activities and disbursements not inconsistent with providing FDIC with protection ... if [its claim] is ultimately reduced to judgment.”
*1167 Facially, some of the Isgitt language arguably supports FDIC’s contention. In totality, however, Isgitt is distinguishable and does not avail FDIC. The creditor in Isgitt timely and formally opposed the ho-mologation of the tableau under CCP Art. 3307, while litigating the merits of his claim in an already pending separate action. Here, FDIC had not yet filed suit on its claim under CCP Art. 3246 when the petition for homologation was filed and did not attempt either to oppose, under Art. 3307, or to suspend, or to show, in the succession proceeding, how it would be prejudiced by, the homologation.
The debts that the Wray executors sought approval to pay are about six percent of the gross estate. On the face of the record, the net value of the Wray estate after payment of these debts is more than double the amount of the $2 million claim FDIC filed in the succession. FDIC has not disputed the valuation of Wray’s assets. Isgitt does not disclose or discuss the value of the estate, the amount of the debts sought to be paid, or the amount of the w.c. claim.
The creditor in Isgitt asked the trial court to suspend the proceedings before the tableau was homologated. Here, FDIC raises the suspension argument for the first time on appeal. Under these circumstances, we shall not speculate whether the trial court would or should have suspended the proceedings a la Isgitt had FDIC filed a timely opposition. On this record, we cannot find reversible error in the judgment homologating the sworn descriptive list.
The partial judgment of possession disposes of about 15 percent of the net value of the estate. It does not relieve the heirs of derivative liability for succession debts, up to the amount of their inheritance. See CC Arts. 1013, 1032, 1422-1432; LRS 9:1421; CCP Art. 3372. Substantial assets remain in the Wray estate. On this record, we cannot find reversible error in the trial court’s granting of the partial judgment of possession.
CONCLUSION
The executors sought, but did not receive, from FDIC, additional information after FDIC filed its proof of claim. The executors expressly mentioned the proof of claim in their petition to homologate the sworn descriptive list and mailed notice of that petition to FDIC. This circumstance negates any suggestion, and FDIC does not contend, that the judgments appealed were obtained by fraud or ill practices.
The mere filing of FDIC’s proof of claim in the record, without other formal steps by FDIC to judicially assert its claim after its claim was deemed rejected by the executors under CCP Art. 3242, does not warrant reversal of the judgments of homologation and partial possession. FDIC’s “objection” in the trial court to future tableaus of distribution was filed after the signing of, and has no legal effect on, the judgments appealed.
DECREE
At the cost of FDIC, the judgments are AFFIRMED.